**CAST STONE COMPANY, INC., Plaintiff-Appellee, v. McGOWN, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4510.   Decided March 27, 1951.

John L. Davies, Jr., Columbus, for appellee.
Herbert & Dombey, Columbus, for appellant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court in favor of plaintiff quieting its title to certain premises, situated in the City of Columbus, as described in the petition.   The petition is in the usual form in actions to quiet title.

The answer avers that the defendant is the owner of a mortgage on the premises described in the petition which mortgage secures a note in the sum of $10,000.00; that "no

payments have been made upon said mortgage and that the plaintiff knew of the existence of said mortgage, and knew that defendant was the owner of the real estate described," and denies generally all other allegations of the petition. The prayer is that the petition of plaintiff be dismissed and that the Court find and declare that defendant's mortgage be a valid subsisting mortgage upon the real estate described in the petition. The amended reply sets forth the source of plaintiff's title and the giving of the original note of $10,000.00 and mortgage securing it and the endorsements on the note as claimed by plaintiff. They vary somewhat from our interpretation of them, as hereafter stated. After the special averments the reply consists of a general denial.

Most of the facts essential to an appreciation of the legal questions presented are undisputed. They are that, in 1930 the plaintiff acquired the premises described in the petition from the First Citizens Trust Company of the City of Columbus for a consideration of One Dollar ($1.00) and other valuable considerations. In the habendum clause of the deed appeared this language:

"that the said premises are free and clear from any incumbrances whatsoever. * * *; and excepting also a certain first mortgage in the principal sum of Ten Thousand Dollars ($10,000.00) held by Orrin Thacker, Sr.; * * * which mortgage the grantee herein does not assume nor agree to pay."

In the warranty clause appears this language:

"and that it will forever Warrant and Defend the same, with the appurtenances, unto the said Cast Stone Co., Inc., its successors and assigns, against the lawful claims of all persons whomsoever except as above but only as to incumbrances or liens arising by, through or under the grantor herein."

In 1920 the defendant, then Nancy Thacker, was the wife of Fred Thacker whose father was Orrin Thacker. In that year, Mrs. Thacker's husband died leaving proceeds of life insurance to his widow in the amount of $20,000.00 Orrin Thacker, the father-in-law, advised defendant that he would invest this money for her.

In 1928, Harvey G. and Florence Price made a mortgage to F. C. Smith securing a note of $10,000.00 payable to Smith. This mortgage, defendant's Exhibit 5, covered the property described in the petition.

We will refer to the endorsements on this note by number. Endorsement Number One is "Pay to Nancy Thacker without recourse to me." Signed, "F. C. Smith." F. C. Smith was a brother-in-law of defendant. The exact date of this assignment does not appear. By it the defendant became the owner

of the note. The possession of this note and mortgage securing it was then, and at all times thereafter, in the possession of Orrin Thacker except when it was up as collateral, at the time of the making of a contract of October, 1938, and when defendant had it for the purpose of endorsement.

Endorsement Number Two is "Nancy Thacker." Respecting this endorsement it appears that defendant notified Orrin Thacker that she desired to get some money and thereafter he negotiated a loan for her with the Perry County Bank, New Lexington, in the sum of $500.00, defendant pledging the note as collateral security for the loan and making the endorsement thereon. This $500.00 loan was paid and the $10,000.00 note was probably returned to Orrin Thacker.

The third endorsement on the note is "Nancy Thacker Lyons." This endorsement was made in 1933 when the defendant was the wife of a man by the name of Lyons. It appears that in 1933 defendant again suggested to Orrin Thacker that she needed money as a result of which she secured a loan of $500.00 from the Crooksville Bank and gave her note in that amount. To secure this note she pledged the $10,000.00 note as collateral and this was the transaction wherein the third endorsement "Nancy Thacker Lyons" was placed upon the note in question.

The next endorsement on the note, Number Four, without date, is "Pay to the order of Orrin Thacker or order without recourse." Signed, "J. L. Bennett." "Orrin Thacker." J. L. Bennett was then the President of the Crooksville Bank.

Endorsement No. One is on the mortgage, which being also on the note proves conclusively that the defendant at that time was the owner and holder of the $10,000.00 note and mortgage. Endorsements No. Two, Four and Five are not on the mortgage. Endorsement No. Three, "Nancy Thacker Lyons" is on the mortgage.

C. M. Bennett, Vice President and Cashier of the Crooksville Bank, testified, and offered a letter from the bank to support his statement, that in 1934 the bank proposed to the defendant that she renew a $500.00 note adding the year's interest thereto; that the note was not renewed and that in his opinion it was paid. Who paid it and under what circumstances does not appear. In any event, up until that time the defendant was the owner of the $10,000.00 note subject only to the payment of the $500.00 note. If it was paid she owned the $10,000.00 note absolutely and was entitled to its possession and the possession of the mortgage; nor, could the title to this note pass to any other except by the act of the defendant or her agent authorized for that purpose.

The bank, if it was paid, had no authority to endorse it to anyone other than the defendant because it was not claimed that it was sold or negotiated to liquidate the note which it secured. There is no proof that defendant by any act of her own intended at any time to transfer the note to anyone other than the two banks and for a special purpose. This fact was known to Orrin Thacker.

In November, 1930, an Article of Agreement was made between Orrin Thacker and Nancy Thacker, parties of the first part and the Cast Stone Co., Inc., Willard Peterson, D. E. Hinds, and I. J. Foit, parties of the second part. This agreement, among other things, recites that the parties of the first part are the owners of the $10,000.00 mortgage, that on November 24, 1930, interest in the amount of $650.00 will be due which interest it is agreed should be paid by second parties as set forth. It further recites that the interest shall be paid according to the terms and conditions of the mortgage except that the interest should be reduced from 6½% to 6% per annum. There was a condition that the due date on the mortgage should be extended to November 24, 1934. There are other provisions in the agreement which are of no probative effect here.

On October 10, 1938, Orrin Thacker, as party of the first part, and the plaintiff, as party of the second part, entered into a written agreement by the terms of which Thacker sold to the plaintiff the $10,000.00 mortgage for the sum of $2,000.00. This formal instrument is the source of title to the mortgage here under consideration. It recites that,

"whereas the said Orrin Thacker, * * *, is the owner and holder of a first mortgage calling for $10,000.00 (Ten Thousand Dollars) signed by Harvey G. Price and wife, dated November 24, 1928. * * *

"Now the said Orrin Thacker, * * *, hereby agrees to sell to parties of the second part, the mortgage above described Ten Thousand ($10,000.00) Dollars for the sum of Two Thousand ($2,000.00) Dollars to be paid as follows: * * *.

"It is understood that said second party" (Cast Stone Co., Inc.,) "agrees to deposit with party of the first part, the $10,000.00 mortgage and note as collateral security for the payment of said $2,000.00 which is to be signed by the party of the second part."

It will be noted that the contract recites that Orrin Thacker is the owner and holder of the mortgage. By implication only it may be said that he represented that he was the owner of the $10,000.00 note. In any event, the second party agreed to deposit it with Thacker which would imply that

he turned it over temporarily, constructively at least, to the Cast Stone Co., Inc., by virtue of the agreement. As we interpret this agreement it is to all intents and purposes an attempted transfer of the note and the mortgage securing it by Orrin Thacker to the Cast Stone Co., Inc., and the transfer in both instances was tantamount to such an endorsement upon the note and mortgage.

On April 30, 1948, Margaret E. Thacker, administratrix of the Estate of Orrin Thacker, deceased, signed a release of the mortgage under consideration to the plaintiff which release recites that the mortgage had been assigned by Nancy Thacker Lyons to Orrin Thacker; that the mortgage and note secured thereby were in the possession of the releasor and that upon full payment thereof were cancelled and delivered to the plaintiff who paid the balance on the mortgage and note. The statement in this release that the mortgage had been assigned by Nancy Thacker Lyons to Orrin Thacker finds no support in the record. Nor, is the statement that plaintiff had made full payment of the note and mortgage borne out by the evidence. This instrument was signed after the executrix had been discharged and the estate closed.

We then come to consider some of the questions projected by this appeal. Four errors are assigned to the judgment which we discuss generally.

The parties devote most of their attention in their briefs to a discussion of the law of agency as it affects the rights of the parties. Mr. Hinds, president of plaintiff company, states that he dealt with Orrin Thacker in the transaction, the subject matter of the agreement of October 10, 1938, which we have recited, as an individual and as agent for the defendant. We conclude that the plaintiff may not be heard to say that he dealt with Orrin Thacker as agent for the defendant in the purchase of the $10,000.00 mortgage. The terms of the written contract control and they expressly disclose that the plaintiff dealt with Orrin Thacker as the sole owner of the mortgage and probably the note. There is nothing in any of the written instruments which are exhibits in this case to indicate that Orrin Thacker was attempting to bind the defendant by his acts as agent for her and there certainly is nothing in the Article of Agreement of October 10, 1938, that suggests that he was acting in any relation whatever as the agent of the defendant. Nor, is there anything in the record which would support the conclusion that Orrin Thacker was vested with authority as agent of the defendant to transfer her title to the mortgage or the note.

The principle controlling the authority to sell real estate is found in 2 C. J. S. 1326:

"Authority to sell real estate exists only when conferred in terms unequivocally manifesting an intention to give it or when its possession is essential to the proper conduct of the agent's employment."

Proof of the authority of an agent to transfer a real estate mortgage should be clear and unequivocal. Orrin Thacker did not claim nor did the banks recognize his authority as agent to transfer title to the $10,000.00 note and mortgage for the purpose of collateral security. Both banks required and secured the endorsement of the defendant on the $10,000.00 note. The acts of Hinds, as president of his company, with Thacker may be reconciled upon the theory only that Thacker spoke for himself in the transaction and had no authority to bind his principal, the defendant. **Miller v. Wick Bldg. Co., 154 Oh St 93.**

The decisive question as we see it in this case depends upon the right of the defendant to assert against the plaintiff the defenses which she could assert against Orrin Thacker had he claimed to be the owner of the note and mortgage. The plaintiff took from Orrin Thacker whatever title it received to the mortgage and note in 1938, approximately four years after the note was due even under the extender granted by the agreement of November, 1930. It was then not a holder in due course and was not entitled to the protection of such a holder.

The status of the plaintiff must be determined in the light of the endorsements on the note because the mortgage debt is the principal obligation between the parties and the mortgage is merely incidental thereto. It is the assignment of the debt which operates as an assignment of the mortgage.

This Court held in **Parker v. Engle, 27 Abs 137,** that in an assignment of the mortgage there involved,

"The rights of the assignees of a mortgage can rise no higher than those of their assignors; any defense which could be asserted against the assignor can be asserted against the assignees."

We cited Bank of Leipsic v. Logan, 9 O. N. P. (N. S.) 40 and **Osborn v. McClelland, 43 Oh St 284** and relied upon the latter case. The facts in this case are set out in the 7th syllabus:

"O., for value received, made and delivered to F. her negotiable note, payable to the order of F. in five years, secured by mortgage. Two years before the same became due, F., without consideration, and solely for the accommodation of B. & S., bankers, loaned the same temporarily to them, to enable them to use the same as collaterals for a loan to meet a present emergency, B. & S., promising to safely keep and

return them. B. & S. did not use them, but they were suffered to remain in their custody until after the note became due, when S., survivor of B. & S., without the knowledge of F., or without authority from her, hypothecated them to M. by delivery, merely saying the note would be paid. M. took the same in good faith and full value, but without inquiry, guaranty, or endorsement by S., relying solely on his possession and the blank endorsement of F. that S. was the owner. **Held**, that M. having acquired the note after due and without inquiry acquired no better title than S. had, and as S. had neither title nor interest which was good against F., he transferred none to M. that in equity gave him the right to foreclose the mortgage as against the real owner."

8th syllabus:

"Neither is F. estopped by her acts from asserting her ownership."

At pages 298 and 299 Judge Johnson says:

"The holder, in order to acquire a better right and title to the paper than his transferrer, must become possessed of it before it is overdue. For if it were already paid by the maker, or acceptor, and had been left outstanding, it would be already discharged, and they would not be bound to pay it again to anyone who acquired it after the period when payment was due. And if it were not paid at maturity, it is then considered as dishonored; and although still transferable in like manner and form as before, yet the fact of its dishonor, which is apparent upon its face, is equivalent to notice to the holder that he takes it subject to its infirmities, and can acquire no better title than his transferrer. The doctrine applicable to this subject has been admirably, stated by Chief Justice Shaw, who says: 'Where a negotiable note is found in circulation, **after it is due, it carries suspicion on the face of it.** The question instantly arises, why is it in circulation? Why is it not paid? Here is something wrong. Therefore, although it does not give the endorsee notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the endorser himself has, and subject to any defense which might be made if the suit were brought by the endorser.' 1 Daniel on Neg. Inst., Par. 782."

8 Am. Jur., Bills and Notes, par. 431; 10 C. J. S. 726, 795. In an extended annotation to Idaho State Bank v. Hooper Sugar Co., 68 A. L. R. 989, Ohio is listed as supporting the proposition that,

"Where, however, the original holder has not invested the transferee for a special purpose with the legal title, it is

generally held that a purchaser after maturity, even in good faith, takes subject to the defenses or equities of the original holder." (Citing Osborn v. McClelland, supra.)

The principle is carried into our Negotiable Instruments Act in §8163 GC:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. * * *."

Sec. 8157 GC:

"To be a holder in due course, one who has taken the instrument must have done so before it was overdue."

It is clear upon this record that had Orrin Thacker attempted to assert ownership to the $10,000.00 note and mortgage against defendant she would have had a complete defense because he was not, in fact, such owner and was attempting fraudulently to benefit by representing that he had the right to transfer them. All parties agree that Orrin Thacker acted in fraud as between him and the defendant. There are other facts which put the plaintiff upon notice that the defendant had, and was insisting upon, an interest in the note and mortgage. The deed by which plaintiff took title to the mortgage premises cast some suspicion on the title of Orrin Thacker to the mortgage. It recites that he was the holder thereof and not that he was the owner. The grantee in the deed does not assume any liability by reason of the mortgage. At about the same time that the deed was made plaintiff was put on specific notice by the terms of its agreement with the defendant that she was, at least, a part owner of the mortgage. Defendant testified and it is not denied that she, at various times, after the note was due, called upon the plaintiff to pay interest to her. Then, too, it is of some probative effect that plaintiff long after the purchase of the mortgage from Orrin Thacker attempted to secure from the defendant a formal release of her interest in the note and mortgage by the execution of a quit-claim deed from the defendant to the plaintiff. Defendant refused to sign the deed. Some of the provisions in this deed are interesting:

"The deed is given to release any rights of the grantor herein in a certain mortgage, executed by Harvey G. Price and wife, to F. C. Smith, filed for record Dec. 14, 1928, and recorded in Mortgage Record 794, page 546, Recorder's Office, Franklin County, Ohio; together with any rights in the lands described in said mortgage, being the above described premises; said mortgage having been assigned by the grantor herein, then Nancy Thacker Lyons, to Orrin Thacker, who

was then the true owner of said mortgage and the debt secured thereby; said Orrin Thacker, said assignee, being Orrin Thacker, Sr., father of Orrin Thacker, Jr. This deed given to correct and explain the allegedly defective assignment of said mortgage by Nancy Thacker Lyons to Orrin Thacker, as the same appears of record."

There is no relevant testimony as to the market value of the lots described in the mortgage, as of 1938, when plaintiff acquired the mortgage from Thacker. Mr. Hinds says plaintiff was offered $500.00 each for these lots. It is probable that the consideration for the transfer of the mortgage was far below the value of the note which it secured. It may have approximated the value of Orrin Thacker's share if it be as suggested in the agreement of November, 1930.

At page 403 of the opinion in **Baily v. Smith, 14 Oh St,** the writer of the opinion says:

"I fully concur in the doctrine laid down by Chancellor Kent, in Bay v. Coddington, 5 Johns, Chy. R. 58. He says 'I have not been able to discover a case in which the holder of negotiable paper, fraudulently transferred to him was deemed to have as good a title, in law or equity, as the true owner, unless he received it not only without notice but in the course of business, **and for a fair and valuable consideration given or allowed on his part,** on the strength of that identical paper.'" (Emphasis ours.)

And at page 406, discussing the interest which the assignee of a note and mortgage acquires, having stated that whether a written assignment was made or not the assignees of the note acquired all the rights and interest of the assignor in the mortgage, continued:

"In such case, the universally acknowledged doctrine, from the case of Davies v. Austin, 1 Ves. 247, to Bush v. Lathrop, 22 N. Y. R. 535, has been, that it is to be regarded as a chose in action, and, as expressed by Lord Thurlow, 'the purchaser must abide by the case of the person from whom he buys;'."

The rule that, when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it, holds only in case of innocent holders into whose hands the note came in the regular course of business, before maturity. If the note be due at the time the agent so transferred it, the person who takes it must stand in the situation of the agent. Emerson v. Crocker, 5 N. H. 159; Ford v. Phillips, 83 Mo. 523; Julian v. Calkins, 85 Mo. 202. Our case differs, too, from some in which the foregoing rule has been applied as to parties to overdue paper but principally where the innocent endorser

has endorsed the note after maturity. Here the defendant endorsed the note before due and for a limited purpose. See Eversole v. Maull, 50 Md. 55.

Upon the whole record, we are convinced that the defendant had a right to assert against the plaintiff all the defenses that she had against Orrin Thacker, the endorser of the note and mortgage to the plaintiff, and that her defense against Thacker would have been complete. This defense is only limited against the plaintiff by reason of the fact, and to the extent, that defendant is estopped to assert title to the note and mortgage by virtue of her signature to the agreement between plaintiff, herself, and Orrin Thacker of November, 1930.

The defense of laches is not made because the rights of these parties are determined by the instruments, endorsements, assignments, and contracts which are in writing. The agency of Orrin Thacker for the defendant was not responsible for the action of the plaintiff in purchasing and attempting to secure title to the note and mortgage under consideration.

The first and fourth errors assigned are sustained and the Court erred in entering judgment quieting plaintiff's title as against the mortgage. As we have heretofore said, by the agreement of November, 1930, to which plaintiff and defendant and Orrin Thacker were parties, the plaintiff was put on notice that the defendant was a part owner of the $10,000.00 mortgage. The defendant, likewise, by her signature to this agreement, acknowledged that Orrin Thacker, at that time, was a part owner of the mortgage. This was not the fact but defendant cannot be heard to say that it was not true as against the plaintiff because of the agreement to which she was a party. In the absence of specific information by the plaintiff of the proportion in which Orrin Thacker and defendant owned the note and mortgage, it would be presumed that they held them in equal proportions.

The order in this Court will be that the judgment of the Common Pleas Court be reversed and that a judgment be entered denying to the plaintiff and the relief sought and dismissing its petition and that the defendant be adjudged to be the owner of the $10,000.00 note, defendant's Exhibit 5, and the mortgage securing it which is a subsisting lien on the premises described in the petition to the extent of a one-half interest in said note and mortgage.

WISEMAN and MILLER, JJ, concur.

## ON APPLICATION FOR REHEARING

No. 4510. Decided April 25, 1951.

By THE COURT.

Submitted on an application of appellee for a rehearing.

Although our rules do not now provide for applications for rehearing, we appreciate that our opinion deviated somewhat from the theories upon which the case was briefed. However, the appellant was given no relief to which she was not entitled under the pleadings and the facts as developed.

We have given careful consideration to the extended argument of counsel for appellee but find no sufficient reason to change the conclusion which we reached in our original decision. We fully presented our view as to the legal principles which we felt required the judgment of reversal.

The application for rehearing will be denied.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.